IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>REMBRANDT CARLOS KEMP,<br><br>　　　　　　　　Defendant. | CR-22-86-GF-BMM-2<br><br>ORDER |

## INTRODUCTION

Defendant Rembrandt Carlos Kemp ("Kemp") has filed a motion to suppress all evidence obtained by law enforcement resulting from a search of Chantel Azure ("Azure")'s vehicle incident to a stop on January 13, 2021. (Doc. 31). Kemp contends that law enforcement lacked reasonable suspicion for the stop. The Government opposes the motion. (Doc. 42.)

## FACTUAL AND LEGAL BACKGROUND

A confidential informant indicated to the Tri-Agency Task Force ("TATF") in early January of 2021 that "CA," or Chantel Azure ("Azure"), was working with Anthony Johnson, also known as Rio ("Johnson"), to sell drugs. (Doc. 42-2 at 2.) The informant told TATF that Azure would be coming to Havre on January 11, 2021.

1

TATF Agent CJ Reichelt ("Agent Reichelt") observed Azure that day with another woman and Kemp outside a motel in Havre sitting in a Chevy Lumina. The informant arranged to buy pills from Azure. Agent Reichelt obtained a state search warrant to conduct audio surveillance. (Doc. 42-3.) Agents again saw Azure and Kemp on January 12, 2021. (Doc. 42-2 at 4.) TATF conducted a controlled purchase from Azure outside the Wal-Mart in Havre on January 13, 2021. (*Id.*) Azure was with two men at the time of the sale. Agents continued surveillance on Azure's vehicle and observed another drug sale between Azure and a "known drug user." (*Id.* at 5.)

TATF informed Havre law enforcement and requested that they stop Azure's vehicle. TATF agents informed Havre police that Azure was driving without a valid license, that Azure had an outstanding arrest warrant, and that Azure and her two male passengers were the subject of an ongoing drug investigation. (*Id.* at 5–6.) Azure's two passengers were Kemp and Martaveon Scott ("Scott"). Havre police officer Brandon Olson ("Officer Olson") stopped Azure's vehicle. (*Id.*)

Officer Olson confirmed that Azure's driver's license had expired. Officer Olson next conducted a warrant search on Kemp. The search turned up a Minnesota state warrant for Kemp issued in October 2020 after Kemp had absconded from felony probation. (Doc. 42-1.) Officer Olson arrested Azure, Kemp, and Scott. Law enforcement searched Kemp and Scott during booking and found each to be in

possession of drugs and cash. Kemp had on his person a bag containing multiple baggies with a total of 4.455 grams of methamphetamine. (Doc. 42-2 at 7; Doc. 42-5; Doc. 42-6.) Scott was in possession of approximately one ounce of methamphetamine and 100 fentanyl pills. (Doc. 42-2 at 7.)

Kemp informed law enforcement during the arrest process that he had bags in the trunk of Azure's vehicle. (*Id.* at 6.) Law enforcement later obtained a state warrant to search the vehicle. The search turned up a digital scale, an AR-15-style assault rifle, and another bag of methamphetamine. (*Id.* at 8.) TATF later searched Kemp's phone pursuant to another state search warrant. (Doc. 42 at 7.) The phone search revealed multiple messages to and from Kemp regarding drug trafficking activity. (Doc. 42-2 at 11–12.)

The Indictment charges Kemp with Count I, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846; and Count II, Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(l) and 18 U.S.C. § 2. (Doc. 1.) Scott is Kemp's co-defendant. Kemp filed a Motion to Suppress on April 11, 2023. (Doc. 31.) The Government filed a Response on April 24, 2023. (Doc. 42.) The Court conducted a suppression hearing on May 8, 2023. (Doc. 50.)

## LEGAL STANDARD

The Fourth Amendment safeguards the right to be free from unreasonable searches and seizures. U.S. Const. amend. iv. Evidence proves admissible in federal court if law enforcement's search and seizure has complied with federal constitutional standards. *See United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987); *Elkins v. United States*, 364 U.S. 206 (1960). A defendant bears the burden of showing that a search conducted pursuant to a warrant was unlawful. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). A person must have a legitimate expectation of privacy in the area searched to establish standing to challenge that a search was illegal pursuant to the Fourth Amendment. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The expectation of privacy must prove reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1994).

## DISCUSSION

Kemp argues that law enforcement lacked reasonable suspicion for the vehicle stop and that all resulting evidence must be suppressed as fruit of the poisonous tree. (Doc. 32 at 6–9.) The Government argues that law enforcement possessed reasonable suspicion in three independent ways and that, in the alternative, Kemp's outstanding warrant precludes suppression. (Doc. 42 at 8–13.)

**I.   Whether the Search Violated Kemp's Fourth Amendment Rights.**

**A.  Kemp's "Mistaken Identity" Argument.**

Kemp contends that his suppression motion arises from a case of mistaken identity by law enforcement. (Doc. 32 at 4–5.) Kemp asserts that law enforcement has confused Kemp with Johnson, both of whom are short Black men. (*Id.*) Kemp maintains that Johnson, and not Kemp, was Scott's trafficking partner. (*Id.*) Kemp fails to connect this argument to the legality of the stop of Azure's vehicle and the ensuing searches of the occupants and the contents of the vehicle. The reasonable suspicion to stop Azure's vehicle arose from TATF's observation of Azure engaging in drug deals, Azure's expired driver's license, and Azure's outstanding warrant. Kemp's identity played no role in the stop. As the Government notes, however, law enforcement possessed independent information and evidence linking Kemp to drug trafficking activity. (Doc. 42 at 3 n.1.) Kemp's "mistaken identity" argument fails to supply a basis for suppression.

### B. Whether Law Enforcement Possessed "Reasonable Suspicion" for the Search.

Law enforcement may stop and detain an individual or vehicle upon reasonable suspicion of criminal activity or an outstanding warrant. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Choudry*, 461 F.3d 1097, 1100 n.2 (9th Cir. 2006). "Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form the basis for particularized suspicion." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019) (internal quotation marks omitted).

Kemp asserts that the search incident to the vehicle stop violated his Fourth Amendment rights due to a lack of reasonable suspicion for the stop. (Doc. 32 at 6–9.) Kemp argues that the stop proved unlawful because law enforcement initially cited a "moving violation" as the basis for the stop but later recorded no moving violation. (*Id.* at 2.) The Government maintains that law enforcement possessed three independent bases for reasonable suspicion with respect to the stop of Azure's vehicle doctrine bars suppression even if the Court finds that law enforcement lacked reasonable suspicion for the stop of Azure's vehicle. (Doc. 42 at 8–12.) The Court will consider each potential basis in turn.

## i. Drug Trafficking Activity.

The Government notes that the following evidence supports reasonable suspicion, if not probable cause, of drug trafficking activity to support the stop: (1) the multi-day TATF investigation into Azure and her associates; (2) "reliable information" from a known informant; (3) a recorded controlled buy that established the presence of drugs and at least one dealer in Azure's vehicle that day; and (4) and surveillance of a second drug deal made from the same vehicle just before the stop. (*Id.* at 9–10.) Kemp's suppression brief does not address these arguments.

"Where one officer knows facts constituting reasonable suspicion or probable cause . . . and [they] communicate[] an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest[.]" *United States v. Ramirez*, 473

F.3d 1026, 1037 (9th Cir. 2007). Kemp appears to argue that Officer Olson knew nothing of the drug investigation. (Doc. 32 at 3.) The record demonstrates that Agent Reichelt did inform Officer Olson of the TATF investigation before the vehicle stop. (Doc. 42-2 at 5–6.) The TATF investigation provided reasonable suspicion for the stop. *Ramirez*, 473 F.3d at 1037.

ii. **Azure's Lack of a Valid Driver's License.**

The Government argues that Azure's lack of a valid driver's license supplies an additional basis for reasonable suspicion that supports the stop. (Doc. 42 at 10–11.) Kemp highlights that Azure's license was expired rather than suspended. (Doc. 32 at 2–3.) Kemp has failed to demonstrate, however, how this distinction changes the legal analysis. Azure lacked a valid driver's license, in violation of Mont. Code Ann. § 61-5-102(1), at the time of the stop. This lack of a valid license supplied an additional ground for reasonable suspicion for law enforcement to stop Azure's vehicle.

iii. **Active Warrant for Azure.**

Kemp concedes that Azure had an active warrant issued by Blaine County Justice Court at the time of the vehicle stop. (Doc. 31 at 2.) The Fourth Amendment "require[s] that the officers have reasonable suspicion to stop a driver for traffic infractions, not that the officers issue citations." *United States v. Willis*, 431 F.3d 709, 717 (9th Cir. 2005). Blaine County's decision not to extradite Azure proves

immaterial to the reasonable suspicion analysis. The active warrant for Azure provided a third basis for reasonable suspicion. *Id.*

### C. Whether the Attenuation Doctrine Applies.

Evidence remains admissible under the attenuation doctrine "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Utah v. Strieff*, 579 U.S. 232, 238 (2016). The U.S. Supreme Court in *Strieff* applied the attenuation doctrine to the context of evidence gained incident to an unlawful search when law enforcement subsequently identified a valid preexisting arrest warrant for the defendant. *Id.* at 241.

The Government asserts that the attenuation doctrine would bar suppression even if the Court determined that law enforcement had lacked reasonable suspicion for the stop of Azure's vehicle. (Doc. 42 at 12–13.) Kemp acknowledges that law enforcement discovered his active Minnesota state warrant and arrested him on that basis. (Doc. 32 at 3.) Kemp fails to address the impact of the valid warrant on his suppression arguments under the attenuation doctrine. The Court assumes without deciding that law enforcement's discovery of Kemp's outstanding Minnesota warrant precludes suppression of evidence gained incident to the vehicle stop. *Strieff*, 579 U.S. at 241.

## CONCLUSION

The Court will deny Kemp's Motion to Suppress (Doc. 31. The Government has demonstrated that Havre law enforcement possessed reasonable suspicion for the vehicle stop. *Arvizu*, 534 U.S. at 273; *Choudry*, 461 F.3d at 1100 n.2. Even had Kemp established that Havre law enforcement lacked reasonable suspicion, Kemp's active Minnesota warrant likely would preclude suppression. *Strieff*, 579 U.S. at 241.

## ORDER

Accordingly, **IT IS ORDERED** that Kemp's Motion to Suppress (Doc. 31) is **DENIED.**

DATED this 16th day of May, 2023.

_____
Brian Morris, Chief District Judge
United States District Court